UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PIERRE LAVI,

                    Plaintiff,

            -v-

MUFG BANK, *et al.*,

                    Defendants.

22-CV-3167 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Pierre Lavi brings this action claiming unjust enrichment against two banks stemming from their alleged misappropriation of the contents of Lavi's bank account. Before the Court is Defendant MUFG Bank's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

I. **Background**

The following facts are drawn from Lavi's Complaint, (ECF No. 1 ("Complaint")) and are presumed true for purposes of this opinion. All reasonable inferences are drawn in Plaintiff's favor.

On May 2, 1996, Lavi made a deposit of approximately $500,000 in an account at Danamon Bank in Jakarta, Indonesia. (Complaint ¶ 2.) The initial deposit was made in U.S. dollars (USD) but converted to Indonesian rupiah at an exchange rate of roughly 2,350 rupiah per dollar.[1] (*See id.*) Lavi alleges that the bank account documents stated that his rupiah balance

---

[1] This implies that the deposit was converted to approximately 1.175 billion rupiah.

would earn an interest rate of 17.5%.  (*Id.* ¶ 3.)  Over the rest of 1996, Lavi requested that

Danamon Bank transfer roughly $181,250 to other individuals.[2]  (*Id.* ¶ 2.)

On May 2, 1997, Lavi requested that Danamon exchange 1 billion rupiah[3] into USD.  (*Id.*

¶ 3.)  Lavi alleges that, at the time, the USD interest rate was 8.5%, *id.*, and the exchange rate

was 2400 rupiah per dollar, *id*. ¶ 12.  After the conversion, Lavi had $416,666.67 in the account.

(*Id.* ¶ 13.)

In January 2024, Lavi sent "several letters" to Danamon requesting that it transfer

$458,000 from his account to an account owned by his son.  (*Id.* ¶ 15.)  Lavi alleges that his son

"never received any amount from Danamon."  (*Id.*  ¶ 19.)  According to Lavi, Danamon sent him

a "fake document claiming that on April 24, 2024" it made the requested transfer to his son.

(*Id.*)  Plaintiff states that the document is fraudulent because: (1) it is an application to transfer

rather than a confirmation of a transfer, (2) he did not sign the application, (3) there is no record

of a transfer fee being charged, and (4) Danamon has not produced any other confirmation that

"funds were actually transferred."  (*Id.* ¶ 20.)

Lavi alleges that the funds in his account have, since 1996, grown to "over $5 million

dollars."  (*Id.* ¶ 23.)  When his requests to Danamon were not acted on, he allegedly traveled to

Jakarta and met with representatives of Danamon at its head office.  (*Id.* ¶ 14.)  He alleges that

despite thirty-three days of waiting in Jakarta, Danamon was unable to "find [his] files."  (*Id.* ¶

18.)

---

[2] This implies, using the same exchange rate of 2,350 rupiah per dollar, an amount of
approximately 426 million rupiah.

[3] It is unclear how Lavi would have had 1 billion rupiah in his account at the time, given
that he transferred roughly 36% of the account to other parties in the second half of 1996.
(Complaint ¶ 2.)  Because the Court must draw all reasonable inferences in favor of Plaintiff at
this stage, the Court infers that Plaintiff received additional transfers *into* the account such that
the total account balance was again over 1 billion rupiah by mid-1997.

Finally, Lavi alleges that MUFG Bank ("MUFG") owns a controlling stake in Danamon Bank, (*id.* ¶ 16), and that Danamon is "an instrumentality of MUFG Bank in New York" (*id.* ¶ 20). As a result, Lavi "requested MUFG New York [] pay him the balance of his account . . . but [has not] received any reply." (*Id.* ¶ 24.) Lavi claims that a representative of MUFG, a "Mr. Shibaraha," "promised that he shall arrange a meeting between [Plaintiff] and his supervisor to reach an amicable settlement of the account," but that such a meeting never occurred. (*Id.*)

Plaintiff has named both MUFG and Danamon Bank as defendants. While MUFG accepted service (ECF No. 18), Danamon Bank has not yet been served.[4] On November 3, 2023, MUFG filed a motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 29-32.) Lavi has filed a response and additional documents. (ECF Nos. 34, 35, 37.) MUFG filed a reply on December 27, 2023. (ECF No. 36.)

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a defendant for "lack of personal jurisdiction." A plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). The plaintiff is required to make only "a prima facie showing," *Schultz v. Safra Nat'l Bank of N.Y.*, 377 F. App'x 101, 102 (2d Cir. 2010), and such a showing "may be established solely by allegations" made in good faith. *Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019) (internal quotation marks omitted). But those

---

[4] Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that a summons be served within ninety days of the date the complaint is filed, Plaintiff is proceeding in forma pauperis (IFP) and could not have served the summons and the complaint until the Court reviewed the complaint and ordered that the summons be issued. Because the Court has not yet issued such an order, the Court extends the time to serve until ninety days after the date the summons is issued.

allegations must have "factual specificity"; conclusory statements do not suffice. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

Plaintiff is proceeding *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*. (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## III.    Discussion

The Court first considers whether it has personal jurisdiction over Defendant MUFG Bank. *See In re Mex. Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 387 n.12 (S.D.N.Y. 2019) ("Ordinarily, courts address challenges to personal jurisdiction and other threshold matters before addressing the merits of a claim.").

There are two kinds of personal jurisdiction: general and specific. "General jurisdiction renders a defendant amenable to suit on all claims," while specific jurisdiction covers only claims that "arise from conduct related to the forum." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-CV-1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)). Both kinds of jurisdiction must comport with due process, which "requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (internal quotation marks omitted).

MUFG is not subject to the Court's general jurisdiction. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts

test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (internal quotation marks omitted). An individual is subject to general jurisdiction in his or her domicile; a corporation where it "is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In general, a corporation is "at home" only "where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). Because MUFG Bank is headquartered and incorporated in Japan (*see* ECF No. 30 ("MoL") at 5-6; ECF No. 31 ("Decl. of Seiji Hayata") at 1), it cannot be subject to the Court's general personal jurisdiction. There are no exceptional circumstances that otherwise indicate that MUFG Bank is "at home" in New York.

With respect to specific jurisdiction, absent consent, the Court may exercise personal jurisdiction over MUFG Bank "only to the extent that 'a court of general jurisdiction' in New York could do the same." *Aviles*, 380 F. Supp. 3d at 259 (quoting Fed. R. Civ. P. 4(k)(1)(A)). For a New York court to exercise jurisdiction over non-domiciliaries, the exercise of jurisdiction "must (1) fall within the scope of New York's long-arm statute and (2) comport with the U.S. Constitution's Due Process Clause." *Id.*

The Court first considers New York's long-arm statute. Under 302(a)(1) of the New York Civil Practice Law and Rules, a court may take jurisdiction over non-domiciliary defendants if the claims arise from "the defendants' transaction of business within the state." *Aviles*, 380 F. Supp. 3d at 260. This requires evaluating whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within New York." *Id*. (internal quotation marks omitted). In addition, there must be "some articulable nexus between the business transacted and the cause of action sued upon." *Id*. (internal quotation marks omitted). Although

there is "no bright-line test" for determining when there is a sufficient nexus, jurisdiction will generally not be justified "where the relationship between the claim and transaction is too attenuated," or where the connection is "merely coincidental." *Licci ex rel. Licci v. Leb. Can. Bank, SAL*, 673 F.3d 50, 67, 66 (2d Cir. 2012) (internal quotation marks omitted).

Assuming without deciding that MUFG purposefully availed itself of operating in New York,[5] Plaintiff does not allege that any of his claims arise from MUFG's activities in New York. Even construing Plaintiff's claims liberally, all of the underlying misconduct was committed by Danamon Bank and occurred in Indonesia. Plaintiff opened the relevant bank account in Indonesia (Complaint ¶ 11), traveled to Indonesia to manage the account (*id.* ¶ 14), and acknowledges that Danamon Bank keeps files and information pertaining to his account in Indonesia (*id.* ¶ 18). Plaintiff did attempt to communicate with Danamon from his home in New York, and alleges that "[a]fter [he] left Jakarta, Danamon Bank sent [him] a fake document." (*Id.* ¶¶ 12, 14, 19.) However, "a handful of communications . . . are insufficient to allow the exercise of specific personal jurisdiction." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018); *see also Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) ("[C]ommunications . . . were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York.").

In addition, the only connection between the alleged misconduct and MUFG is that Danamon is a subsidiary of MUFG. Lavi does not allege that MUFG exercised any supervision or control over Danamon Bank, that it serviced any of Danamon's clients, or that it took any

---

[5] Lavi alleges that MUFG "has [had] a presence in New York since 1880" and "maintains an office" in Manhattan. *See* Complaint ¶ 6.

other actions in connection with the events described in the Complaint.  (Complaint ¶ 20.)  Lavi

does allege that he attempted to communicate with various employees of MUFG, and that at least

one such employee "promised that he shall arrange a meeting," but the meeting never occurred

and, in any event, the communications took place decades after the events underlying his claims.

(*Id.* ¶ 24.)  While Danamon is indeed a subsidiary of MUFG, "control over [a] subsidiary

corporation and the discharge of that supervision alone is not enough to subject the parent to

New York jurisdiction," unless "the activities of the parent show a disregard for the separate

corporate existence of the subsidiary."  *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft

Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  Here, Lavi has not pleaded any connection between

MUFG and Danamon beyond a mere subsidiary relationship.  Thus, even were there a

connection between Danamon's misconduct and New York, that connection could still not be

imputed to MUFG.

In sum, the connections between Plaintiff's claims regarding MUFG and New York are

"too tenuous to support the exercise of specific jurisdiction."  *SPV*, 882 F.3d at 344.  As there is

no nexus between Plaintiff's claims and MUFG's business in New York, Plaintiff cannot

establish personal jurisdiction under 302(a)(1).  Because there is no statutory basis for

jurisdiction, the Court need not address whether the exercise of personal jurisdiction would

comport with due process.  Nor need the Court proceed to any discussion of the merits.  Absent

facts demonstrating the existence of personal jurisdiction, the claims concerning MUFG Bank

must be dismissed.

## IV.    Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular

should be afforded every reasonable opportunity to demonstrate that he has a valid claim."

*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d

Cir. 2000)). "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). But leave should be denied if repleading would be "futile." *Id.*

Here, Lavi's request is offered "without any suggestion of what changes such amendment might effect." *In re Agnico-Eagle Mines Ltd. Sec. Litig.*, No. 11-CV-7968, 2013 WL 144041, at *21 (S.D.N.Y. Jan. 14, 2013), *aff'd sub nom. Forsta AP-Fonden v. Agnico-Eagle Mines Ltd.*, 533 F. App'x 38 (2d Cir. 2013). It is clear that the Court lacks personal jurisdiction over MUFG and there is no indication that additional facts would change that conclusion. Amendment would therefore be futile and Lavi's request to amend is denied.

## V.    Conclusion

For the foregoing reasons, Defendant MUFG Bank's motion to dismiss is GRANTED and Plaintiff Lavi's request for leave to amend is denied.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close the motion at Docket Number 29.

The Clerk of Court is directed to mail a copy of this opinion and order to Plaintiff.

SO ORDERED.

Dated: August 23, 2024
       New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge